IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, an individual, and JANE DOE II a minor by and through her parent and guardian, JANE DOE, ) ) ) ) Plaintiff, ) v. ) ) SELECT SPECIALTY HOSPITAL-- PITTSBURGH/UPMC, INC. AND TATIA FIRESTONE, and TATIA FIRESTONE, an adult individual, ) ) ) ) ) ) Defendant. | Civil Division<br><br>No.  23-1422<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

AND NOW COME Plaintiffs, Jane Doe and Jane Doe II, her minor daughter, (collectively "Plaintiffs") by and through their undersigned counsel and bringing this Complaint seeking legal and equitable relief against Select Specialty Hospital—Pittsburgh/UPMC, Inc. ("Defendant" or "Select") and Tatia Firestone ("Ms. Firestone" and collectively "Defendants") for violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., the Americans with Disabilities Act of 1990 and the ADA Amendments Act of 2008 (collectively, the "ADA"), and related claims over which this Court has supplemental jurisdiction. Plaintiffs state and aver the following:

## PARTIES

1. Plaintiff Jane Doe is a resident of Washington County Pennsylvania.[1] Ms. Doe is currently over the age of majority and can be contacted through her Counsel Stephanie L. Solomon, Esq., of HKM Employment Attorneys, LLP, 220 Grant Street, Suite 401, Pittsburgh, PA 15219.

---

1. Ms. Doe intends to file a Motion for Leave to Proceed Under Pseudonym in conjunction with her Complaint in order to protect the identity of Jane Doe II as a minor sexual assault victim.

1

2. Plaintiff Jane Doe II is also a resident of Washington County. Jane Doe II is a minor and the daughter of Jane Doe and has claims in her own right stemming from the facts giving rise to this litigation.

3. Plaintiffs' names, addresses and ages are not contained in this Complaint so as to protect the privacy and identity of Jane Doe II, a minor, who was the victim of sexual assault.

4. Use of pseudonyms throughout is done in good faith in order to avoid humiliation, embarrassment, additional psychological harm, and disruption or interference with potential criminal charges. Plaintiffs' identities are already known by the Defendant.

5. Upon information and belief, at all relevant times hereto, Select is and was a foreign corporation incorporated in the state of Missouri and operating under the laws and within the Commonwealth of Pennsylvania.

6. Upon information and belief, at all times relevant hereto, Tatia Firestone is and was an adult individual residing at PO Box 95, Pleasant Unity, PA 15676. Firestone is and was employed by Select during all relevant times.

## JURISDICTION AND VENUE

7. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331. This action is authorized and instituted pursuant to the Family Medical Leave Act and the Americans with Disabilities Act.

8. Pursuant to 28 U.S.C. § 1367(a), The United States District Court for the Western District of Pennsylvania has supplemental jurisdiction over Plaintiffs' state law claims, which arise from the case and/or controversy as the aforementioned claims, for which this Court has original jurisdiction.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant is located within this Judicial District and a substantial part of the events and omissions giving rise to the Complaint occurred within this district.

10. Plaintiff timely exhausted her administrative remedies by filing a charge against Defendant on or about December 5, 2022, jointly with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") at 533-2022-00552. Plaintiff's PHRC and EEOC Charges are incorporated by reference as if fully set forth herein. On May 25, 2023, the EEOC mailed Plaintiff a Dismissal and Notice of Rights letter (the "Right to Sue" letter), advising her of the right to bring this action. Plaintiff has filed the instant suit within 90 days of receipt of the Right to Sue letter.

## FACTS

11. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

12. At all relevant times hereto Select Medical Corporation did and does business as Select Specialty Hospital Pittsburgh, maintaining a location at 200 Lothrop Street, UPMC Montefiore—8 South MUH E823, Pittsburgh, PA 15213, where Jane Doe was employed.

13. Select Specialty Hospital is and was a 32-bed critical illness recovery hospital located on the eighth floor of UPMC Montefiore Hospital that specializes in helping critically ill patients breathe, speak, eat, walk and think as independently as possible.

14. On or about February 24, 2022, Jane Doe requested a confidential meeting with Rose Gaglia (CEO), Jennelle Taylor (Human Resources) and her direct supervisor, Tatia Firestone (DCM) to discuss her need to take leave under the Family Medical Leave Act.

15. During said conversation, Ms. Doe stated several times that she did not wish for the details of her situation to be repeated and was assured that the conversation was confidential.

16. Ms. Doe went on to disclose the rape of her minor daughter, Jane Doe II, and indicated that because of the assault, she herself developed a serious health condition that was a sensitive and private in nature.

17. She indicated that they were working with the Department of Children, Youth, and Family (CYF) and therapy would be starting within their home for all family members.

18. As a result of this conversation, Jane Doe applied for leave under the Family Medical Leave Act.

19. Ms. Doe was told by Ms. Taylor that she could only have three (3) weeks of leave.

20. As a result of this representation, Ms. Doe's physician provided the dates of her leave accordingly.

21. At no time was Ms. Doe provided additional information or informed that she was actually eligible for up to twelve (12) weeks of leave or that her leave could be intermittent.

22. Ms. Doe's application for FMLA included a submission of her sensitive and detailed medical information.

23. 29 C.F.R. § 825.500(g) requires records and documents relating to medical certifications, created for purposes of FMLA, to be maintained as confidential medical records separate from the employee's personnel file.

24. Select approved Ms. Doe's leave through March 20, 2022.

25. On or about March 21, 2022, Ms. Doe returned to work following her FMLA Leave.

26. Unbeknownst Ms. Doe and without her consent, subsequent to her written disclosure of sensitive and detailed medical information about herself and Jane Doe II to the Defendant, a management level employee chose to retaliate and embarrass Ms. Doe by disclosing to her coworkers the sensitive and private nature of her health condition and her leave of absence.

27. Upon her return, her coworkers began approaching her and speaking with detailed knowledge of the events surrounding her FMLA leave, which information was only available in her FMLA application and medical certification, which pursuant to 29 C.F.R. § 825.500(g) was to be kept confidential.

28. At no time did Ms. Doe disclose the nature of her FMLA leave or serious health condition to anyone other than her supervisor, Defendant's Human Resources Department and CEO Rose Gaglia, who received her FMLA application and medical certification.

29. Within the first week of her return, Ms. Doe requested a meeting with Rose Gaglia and Tatia Firestone because Jenelle Taylor (Human Resources) was unavailable.

30. Ms. Doe told Ms. Gaglia and Ms. Firestone that it was unacceptable that people learned of Jane Doe II's sexual assault, and it was a breach of her confidentiality.

31. During this conversation, Ms. Firestone confirmed to Ms. Gaglia that she did, in fact, reveal the details of Ms. Doe's FMLA leave to various staff members. She was crying and apologized, at which point Ms. Gaglia abruptly ended the meeting.

32. Thereafter, the disclosures, and gossip surrounding them, persisted. Additional co-workers and subordinate employees continued to approach Ms. Firestone and made specific inquiries relating to her serious health condition, frequently making fun of her.

33. On August 3, 2022, Ms. Doe was subpoenaed to attend a hearing relating to her daughter's sexual assault case.

34. She, again, asked for a leave and asked Ms. Firestone, Ms. Taylor and Ms. Gaglia not to disclose the reason she would not be at work that day.

35. On or about August 11, 2022, Ms. Doe was approached by employees about the hearing.

36. Ms. Doe was then called into a meeting with Ms. Gaglia, Ms. Firestone, and Lauren Kokonaski (Chief Nursing Officer) to discuss the situation.

37. During the conversation, Ms. Firestone, again, admitted that she told people what was going on with Jane Doe II's sexual assault case.

38. Ms. Doe was irate and verbally said that she quit.

39. Ms. Gaglia told her she refused to acknowledge the statement and to, instead, take off the next day (Friday, August 12, 2022) and they could discuss the matter further on Monday.

40. Ms. Doe then reported the incident to the Select Helpline.

41. That same day, August 12, 2022, Leslie Mock (Regional Human Resources Director) called Ms. Doe and spoke with her regarding her concerns about Ms. Firestone's illegal and inappropriate disclosures.

42. Ms. Mock called, again, later that day and tried to force Ms. Doe to resign.

43. Ms. Doe refused to resign, indicating that she said she was quitting in the heat of the moment, fueled by the emotions from learning that her immediate supervisor had, once again, breached her confidences and willfully violated the law.

44. Ms. Doe was placed on a leave of absence pending an investigation by Ms. Mock.

45. At the conclusion of her investigation, Ms. Mock advised Ms. Doe that she would be returned to work and would still be required to report to Tatia Firestone; that she could not confirm that Ms. Firestone received any type of discipline or retraining as a result of her violations;

6

that she could not protect her from acts of retaliation moving forward and that she could not disclose to Ms. Doe what was being done to prevent the further spread of her sensitive medical information and her daughter's rape.

46. Ms. Doe would undoubtedly require additional leave under the FMLA to deal with her mental health and would be required to miss additional days of work due to the ongoing criminal suit against Jane Doe II's assailant; yet she was expected to return to work and to continue to request time off and discuss the reasons for her absences with Ms. Firestone, who repeatedly violated the FMLA and Ms. Doe's right to privacy.

47. At this point, Ms. Doe's working conditions were so intolerable that any reasonable person in her same situation would have felt compelled to quit.

48. Ms. Doe and Jane Doe II's private facts were brought into public light as a result of Defendants' disclosures.

49. If an employee takes leave under the FMLA, co-workers may only be told that the employee is taking leave.

50. However, Defendants disclosed Jane Doe's personal health information and Jane Doe II's sexual assault without their authorization.

51. Jane Doe thereafter demanded that Defendants take corrective action, but none was taken.

52. As a direct and proximate result of Defendants' actions and inactions, Ms. Doe and Jane Doe II sustained and continue to sustain injuries for which they are entitled to compensation including, but not limited to, past, present and future psychological pain, suffering and impairment; medical bills, counseling and other costs and expenses, for past and future medical and psychological care, actual and consequential damage associated with Jane Doe's interference in

retaliation with her FMLA rights, compensatory and punitive damages, along with costs of this litigation including reasonable attorneys fees'.

## COUNT I

### Violation of the Family Medical Leave Act ("FMLA") – Interference
*Jane Doe v. Defendants*

53. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

54. The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by the FMLA.

55. Plaintiff is an eligible employee under the FMLA, and Defendant is a covered employer within the meaning of the FMLA.

56. Jane Doe qualified for FMLA leave under 29 U.S.C. § 2611 (11); 29 C.F.R. § § 825.11(a); 825.800 since she began suffering from a serious health condition as defined by the FMLA and had worked for more than 1,250 hours in the previous 12 months.

57. Select employed at least 50 employees for at least 20 weeks in the previous 12 months preceding Jane Doe's leave.

58. Jane Doe advised Select of her need for leave due to her own serious medical condition and the sexual assault of her daughter.

59. Select determined Jane Doe was eligible for leave under the FMLA.

60. Select misrepresented to Jane Doe that she was only eligible for three (3) weeks of leave, when she actually qualified for twelve (12) weeks of leave.

61. Jane Doe is and was entitled to all the rights, benefits and protections of FMLA, including the Defendants' duty to keep her protected health information confidential.

62. Defendants' breached this duty and thus interfered with her rights under the FMLA by disclosing her protected health information and Jane Doe II's sexual assault without her consent.

63. Tatiana Firestone admitted to breaching this duty.

64. Jane Doe engaged in activity protected by the FMLA when she disclosed her need for leave due to her serious health condition including the disclosure of the nature of her serious health condition along with its cause i.e. her daughter's rape.

65. A causal connection exists between Jane Doe's request for FMLA-protected leave and the illegal disclosure of her personal health information and the sexual assault of her daughter from her FMLA application and medical certification.

66. Defendants denied Jane Doe a benefit to which she was entitled under the FMLA— to maintain her application and medical certification in accordance with 29 C.F.R. § 825.500(g) and to keep this information confidential.

67. Jane Doe was terminated (constructively discharged) because of Defendants' prohibited conduct under the FMLA.

68. Such interference with Plaintiff's rights under the FMLA has caused serious damage to Plaintiff, and she is entitled to all damages authorized by 29 U.S.C. §2617, including lost wages and benefits, interest, liquidated damages, attorneys' fees, expenses and equitable relief.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II

### Violation of the Family Medical Leave Act ("FMLA") – Retaliation
*Jane Doe v. Defendants*

69. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

70. Jane Doe informed Select of her likely need for leave for her own serious health condition and to handle the aftermath of her daughter's sexual assault.

71. Jane Doe disclosed her serious health condition in writing to Select.

72. Jane Doe engaged in activity protected by the FMLA when she requested leave due to her serious health condition and providing of details associated therewith.

73. Defendants knew, or should have known, that Jane Doe was exercising her rights under the FMLA and was aware of her need for FMLA-protected absence and the nature thereof.

74. Defendants retaliated against Jane Doe by illegally disclosing her protected health information and information relating to Jane Doe II's sexual assault, learned during the FMLA statutorily protected process of requesting leave.

75. Ms. Firestone admitted to disclosing Jane Doe's protected health information and information relating to Jane Doe II's sexual assault.

76. Defendants willfully and intentionally committed this act of retaliation because she engaged in the statutorily protected activity of requesting FMLA leave.

77. When Ms. Doe reported the incident and asked for an investigation to occur, she was again retaliated against.

78. Select advised Ms. Doe she would be required to continue to report to Tatia Firestone, knowing Ms. Doe would undoubtedly require additional leave under the FMLA to deal with her mental health and would be required to miss additional days of work due to the ongoing criminal suit against Jane Doe II's assailant; yet she was expected to return to work and to continue to request time off and discuss the reasons for her absences with Ms. Firestone, who repeatedly violated the FMLA and Ms. Doe's right to privacy.

79. Ms. Doe was terminated (constructively discharged) in retaliation for complaining that her FMLA rights had been violated.

80. As a result of the above-described violations of FMLA, Jane Doe has been damaged by Select in the nature of lost wages, salary, employment benefits, and other compensation and is therefore entitled to all damages authorized by 29 U.S.C. §2617, including lost wages and benefits, interest, liquidated damages, attorneys' fees, expenses and equitable relief.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III

### Intentional/Negligent Infliction of Emotional Distress
*Jane Doe and Jane Doe II v. Defendants*

81. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

82. Defendants, as the employer of Jane Doe, owed Plaintiffs a duty to keep safe their personal health information and information relating to their sensitive private affairs (i.e. Jane Doe II's rape).

83. Defendants conduct was intentional, reckless or negligent in:

   a. Allowing Jane Doe's protected health information to be disclosed;

   b. Allowing information relating to Jane Doe II''s sexual assault to be disclosed;

   c. Failing to train, supervisor or monitor its employees relating to the handling of protected health information and personal information; and

   d. Failing to discipline its employees following personal attacks and disclosures of protected health information and personal information.

84. The aforementioned breaches were the direct and proximate cause of the disclosure of private facts and health information relating to both Plaintiffs which, in turn, caused them severe emotional distress, embarrassment and humiliation.

85. The disclosure of this information was intentional or reckless and was motivated by the personal animus of Ms. Firestone and other Select employees towards Jane Doe and/or their desire to personally attack her.

86. The disclosures were for purely personal reasons unrelated to Jane Doe's employment.

WHEREFORE, Plaintiffs seek the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT IV

### Discrimination and Retaliation in Violation of the Americans with Disabilities Act and Amendments Thereto ("ADA")
*Jane Doe v. Select Specialty Hospital—Pittsburgh/UPMC, Inc.*

87. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

88. At all times relevant, Defendant was an "employer" within the meaning of the ADA and/or ADAA.

89. At all relevant times hereto, Jane Dow is and was a "qualified individual with a disability" as that term is defined in the ADA because she has, or had at all times relevant hereto, a physical impairment that substantially limited/limits one or more major life activities, or because she had a record of such impairment.

90. At all relevant times hereto, Jane Doe is and was also a "qualified individual with a disability" as that term is defined in the ADA because she was regarded as and/or perceived by Defendant and their agents as having a physical and/or mental impairment that substantially limited/limits one or more major life activities.

91. Specifically, Jane Doe suffers from depression and anxiety as a result of her daughter's rape.

92. Jane Doe could complete the functions of her position with or without a reasonable accommodation.

93. Jane Doe applied for leave under the Family Medical Leave Act to seek treatment for her disability.

94. Jane Doe was told by Ms. Taylor that she could only have a three (3) week leave, in the form of an accommodation.

95. As a result of this representation, Jane Doe provided the dates of her leave accordingly.

96. At no time was Jane Dow provided information or told that she actually was eligible for up to twelve (12) weeks of leave or that her leave could be intermittent.

97. Select willfully withheld this information from her because of her disability.

98. Select further refused to engage Jane Doe in the interactive process to determine if an accommodation was appropriate and reasonable.

99. Jane Doe's application included the submission of her sensitive and detailed medical information demonstrating Select's awareness of said disabilities.

100. Select approved Jane Doe's leave through March 20, 2022.

101. On or about March 21, 2022, Jane Doe returned to work following her medical leave and was immediately retaliated against.

102. Unbeknownst to Jane Doe and without her consent, a management level employee chose to retaliate and embarrass Ms. Doe by disclosing to her coworkers the sensitive and private nature of her health condition and her leave of absence.

103. Upon her return, her coworkers began approaching her and speaking with detailed knowledge of the events surrounding her leave creating a hostile work environment for Jane Doe.

104. At no time did Jane Doe disclose the nature of her FMLA leave or disabilities to anyone other than her supervisor, Defendant's Human Resources Department and CEO Rose Gaglia, who received her FMLA application and medical certification.

105. Select further retaliated against Jane Doe for speaking up regarding this discriminatory conduct.

106. Jane Doe would undoubtedly require additional leave manage her disabilities and would be required to miss additional days of work due to the ongoing criminal suit against her daughter's assailant; yet she was expected to return to work and to continue to request time off and discuss her sensitive disabilities Ms. Firestone, who repeatedly violated the FMLA and Ms. Doe's right to privacy.

107. Jane Doe thereafter resigned. At this point, Ms. Doe's working conditions were so intolerable that any reasonable person in her same situation would have felt compelled to quit.

108. Defendant's unlawful and discriminatory practices complained of herein were intentional and done with malice or without reckless indifference to Plaintiff's federally protected rights.

109. As a direct and proximate result of the unlawful and discriminatory practices described herein, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and potential lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, and pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she has suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the ad damnum clause of this Complaint, *infra*.

# COUNT V
## Discrimination and Retaliation in Violation of the Pennsylvania Human Relations Act
### *Jane Doe v. Select Specialty Hospital—Pittsburgh/UPMC, Inc.*

110. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

111. This is an action arising under the provisions of the laws of the PHRA and this Honorable Court has, and should, exercise pendent jurisdiction over the same because the cause of action set forth in this COUNT V arises out of the same facts, events and circumstances as in the above COUNT IV, and therefore judicial economy and fairness dictate that this COUNT V be brought in this same Complaint.

112. At all times relevant, Defendant was an "employer" within the meaning of Section 954(b) of the PHRA.

113. By engaging in the creation and fostering of a discriminatory environment based on Ms. Doe's disability, Defendant violated those sections of the PHRA which prohibits discrimination based upon disability regarding the continuation and tenure of employment.

114. Defendant's termination of Plaintiff's employment was motivated by her disability, disability and/or because Defendant regarding Plaintiff as disabled and/or occurred because Plaintiff took protected FMLA leave as an accommodation to seek treatment for her disability.

115. Defendant's unlawful and discriminatory practices complained of herein were intentional and done with malice or without reckless indifference to Plaintiff's state-protected rights.

116. As a direct and proximate result of the unlawful and discriminatory practices described herein, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and potential lost front pay and benefits, but also substantial emotional and

physical distress, embarrassment and humiliation, and pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he has suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the ad damnum clause of this Complaint, infra.

## DEMAND FOR JURY TRIAL/ AD DAMNUM CLAUSE

WHEREFORE, Plaintiffs demand judgment against Defendants, and damages in excess of $75,000 as follows:

a. That Plaintiff Jane Doe be awarded actual and consequential damages to make Plaintiff whole including back pay with prejudgment interest, front pay and compensation for lost benefits, in an amount to be proven at trial, and other affirmative relief necessary to eradicate the effects of Plaintiff's damages associated with Defendants violations of Jane Doe's FMLA rights, plus interest;

b. That Jane Doe be awarded economic and compensatory damages to compensate for all costs associated with the interference and retaliation including lost wages and medical expenses;

c. That Jane Doe be awarded nominal damages;

d. That Plaintiffs be awarded damages for their emotional distress including, but not limited compensation for past, present and future psychological pain, suffering and impairment; medical bills, counseling and other costs and expenses, for past and future medical and psychological care

e. That Plaintiffs be awarded punitive damages in an amount sufficient to punish Defendant for its intentional, wanton and malicious conduct and to deter similar misconduct;

  f. That Plaintiff Jane Doe be awarded the costs of this litigation, including reasonable attorney's fees; and

  g. That Plaintiffs be awarded such further relief as deemed to be just and proper.

Date: August 8, 2023       Respectfully Submitted,

            */s/ Stephanie L. Solomon*
            Stephanie L. Solomon, Esquire
            Pa. I.D. 208056
            Amy E. Mathieu, Esquire
            Pa. I.D. 323093
            HKM EMPLOYMENT ATTORNEYS LLP
            220 Grant Street
            Suite 401
            Pittsburgh, PA 15219
            412.760.7802
            ssolomon@hkm.com
            amathieu@hkm.com

            **JURY TRIAL DEMANDED**